**Leo T. BARBER, Plaintiff,**

v.

**W. Sam EDWARDS, Adm'r, estate of Marion H. Allen, deceased, former Collector of Internal Revenue, Defendant.**

**Civ. A. No. 1152.**

United States District Court,
M. D. Georgia, Macon Division.
April 4, 1955.

Moore, Gibson, DeLoache & Gardner, Moultrie, Ga., R. Lamar Moore and Waldo DeLoache, Moultrie, Ga., of counsel, for plaintiff.

Frank O. Evans, U. S. Atty., Macon, Ga., Andrew D. Sharpe and David A. Wilson, Jr., Sp. Assts. to the Atty. Gen., for defendant.

DAVIS, Chief Judge.

Plaintiff, Leo T. Barber, filed suit to recover $1,164.80 overpaid income taxes for the calendar year 1945. The claim is based upon an error having been made in reporting certain partnership income. The answer of defendant admitted plaintiff's allegation in this respect, but denied that he was entitled to the refund claimed, or to any refund, seeking set-off on two grounds:

(1) That plaintiff understated his income on his 1945 tax return because the gain from the sale of certain real estate was ordinary income rather than capital gains as reported by the taxpayer; and

(2) That a reported contribution to an alleged charitable trust was not an allowable deduction. The defendant is not seeking any recovery, the statute of limitations having run as to the claims urged as set-offs.

The questions are, therefore: (1) Whether or not, during the taxable year 1945, in regard to certain real estate sold, plaintiff was in the real estate business as contemplated by Sections 117 (a)(1) and 117(j)(1), Internal Revenue Code of 1939, as amended, 26 U.S.C.A. §§ 117(a)(1) and 117(j)(1); and (2), whether the charitable trust to which plaintiff made the contribution in question qualifies under Section 23(o), Internal Revenue Code of 1939, as amended, 26 U.S.C.A. § 23(o).

 The matter was submitted to the Court without a jury. At the outset plaintiff took the position that the burden of proof was upon the defendant, and moved for a ruling requiring defendant to assume such burden and to go forward therewith. The Court at that time tentatively ruled that the burden was upon the plaintiff to establish his right to recover, pursuant to which ruling plaintiff introduced evidence by way of oral testimony and documents. The defendant also submitted certain documentary evidence.

The Court now confirms its tentative ruling in this respect and, as a preliminary conclusion of law, holds that the burden rested with the plaintiff to establish his right to recover as against the defenses interposed.

From the evidence submitted the Court finds the material facts to be, as follows:

The taxpayer, Leo T. Barber, is a resident of Moultrie, Georgia, and has been for many years. He has been, during the past 20 years or more, engaged in the general contracting business. During that time and for many years prior thereto, he has been also engaged in the business of lending money, in many instances upon the security of real estate, and at times and during certain periods in the past for the purpose of financing automobiles. The taxpayer is also associated with the banking business, being a stockholder and director in a bank in Moultrie, and having interest in and holding positions in other banks. Primarily, the taxpayer is a general contractor.

At various times, particularly during the period of the early 1920's and the period from 1928 up to about 1934, the taxpayer acquired various tracts of land, both within and without the City of Moultrie, through foreclosures. The tracts involved in this litigation were acquired through foreclosures during the latter mentioned period.

Throughout the years the taxpayer has also purchased various tracts of real estate, which he purchased for investment, and most of which he held after acquisition and rented. In many instances he improved land and built houses thereon for the purpose of renting. Similarly, the properties which he acquired through foreclosures were after such acquisition held and rented, or, if not improved for rental purposes, were held as vacant or unimproved property. All of such acquisitions by the taxpayer were

made and the land held for purposes of investment.

Occasionally, the taxpayer would sell a portion of a tract of land or an entire tract or a lot from a tract. Such sales activity has been carried on rather passively, the taxpayer having been in each instance and without exception approached by the prospective purchaser who requested to buy the property. Throughout the period of the taxpayer's business life, with possibly one minor exception prior to the year 1920 or thereabouts, the taxpayer has never advertised any of his property for sale, solicited any real estate customers, nor has he ever placed any of his property with a real estate agent or broker for sale. The taxpayer is not, nor has he ever been, a licensed real estate agent or a broker, nor has he maintained a real estate office or employed any persons for the purpose of selling or soliciting sales for real estate of any kind.

The number of land sales by the taxpayer throughout his business life has varied from year to year. His income tax return for the taxable year 1945 lists under long term capital gains 18 transactions, 14 of which involved the sale of real estate. The Commissioner determined that six of these sales were of property held for sale in the ordinary course of business, and that the gain from the said six sales should be treated as ordinary income rather than as capital gains income. If such gains were treated as ordinary income, the amount of additional tax resulting from an adjustment would more than offset the amount sought to be recovered by the taxpayer.

The six sales in question were from properties known as the Country Club Subdivision and the Tifton Highway property, which are two tracts acquired by the taxpayer during the period from 1928 to 1934 by way of foreclosure. The Country Club Subdivision was acquired about 1934 and comprised about 60 acres. At the time taxpayer acquired this property it was being used as a golf course and country club grounds. It was used as a golf course for several years after-

wards. Shortly after the tract was acquired the taxpayer sold one or two lots therefrom which fronted on the highway, upon which the purchasers constructed dwelling houses. For the next few years he sold two or three other tracts in the vicinity of the highway and in each instance, in order that the purchasers could satisfy lending institutions and in some instances F. H. A. requirements, individual plats of survey were made of the tract so sold.

For some years after taxpayer's acquisition of this tract he held the intention of eventually building himself and his family a home there but this idea was later abandoned. During the late 1930's or early 1940's the taxpayer had a portion of this tract subdivided into lots. Eventually almost the entire tract was subdivided into lots and a plat of survey entered in the Public Land Records designating the property as that of the taxpayer.

Subsequently, at taxpayer's instance, the County constructed a road or street into this tract which extended several hundred yards and alongside the lots on which taxpayer was constructing, or upon which he intended to construct dwelling houses for the purpose of renting same. The taxpayer himself constructed a sewer line to serve these houses which he was then constructing and preparing to construct, and the sewer line was placed so that it would serve a number of other lots near those on which he was then building. The sewer line, however, did not extend any further than was necessary to serve the houses the taxpayer was preparing to build at that time; nor did the street extend any further than was necessary to give access to the houses then under construction or to the lots upon which construction was then proposed. The City of Moultrie serves water to this property.

During the years 1943 and 1944 the taxpayer began constructing several houses on lots in this subdivision, and in one or two instances persons approached him to purchase the houses then under construction, and taxpayer sold the

houses to them. When the other houses he constructed were finished, he began renting them. A few of those houses which he rented were later purchased from him upon application by the prospective purchasers. Some houses are still being rented. During this period one vacant lot was sold at the instance of a prospective purchaser and the old Country Club building on this tract was sold to the Elks Club after it had been rented to various persons for several years prior thereto. The road or street into the subdivision has since been extended, but other platted streets have not been cut. Also, from this particular tract the taxpayer has given his children certain lots therein.

During the entire time the taxpayer has held this Country Club property he has conveyed less than 20 acres which constitute the sale and gift of less than twenty tracts therefrom. Four of the six sales in question during the taxable year 1945 were from this Country Club Subdivision. One of these was the sale of an additional and adjacent tract to the Elks Club, which sale was made at their request and rather upon their insistence that they needed more grounds around their club house. In each of the other instances the purchaser approached the taxpayer in order to buy the property.

The two other sales in question were lots in the tract known as the Tifton Highway property. This tract was acquired in acreage through foreclosure in about 1928. After the taxpayer acquired this tract a new paved road was routed through it and over a period of years he sold off from time to time various tracts fronting on the said road. The sales were made at first without any plats of survey, and prior to any subdivision of the property, but in order to avoid confusion and, in order to delineate the tracts facing on the road, the taxpayer several years ago plotted off lots along the paved road; but the subdivision of that portion along the road did not include the entire tract, the back portions of the tract being used for growing trees and at times for grazing cattle.

All platted lots therein have been sold but taxpayer still owns the back portions of the tract. In regard to all sales from this tract of land the purchasers have approached the taxpayer, he at no time advertising or soliciting in order to sell these lots.

These two tracts, the Country Club Subdivision and the Tifton Road property, lie near the City of Moultrie, the former lying adjacent to and immediately south of said City, and the latter lying 3 or 4 miles out the Moultrie-Tifton Road, both of which areas are growing up in suburban development. There are subdivisions in and around the Country Club Subdivision, further south of, west of and southeast of the City of Moultrie, in which there has been rather rapid development and in which there has been constructed several hundred houses during the time that taxpayer has held the said Country Club Subdivision. The Country Club property still contains some 35 or 40 undeveloped acres of land. No other development activity or improvements have been made by taxpayer in either of these tracts.

The taxpayer made a deduction in his 1945 income tax return for a contribution to a charitable trust, known as the Leo T. Barber Charity Trust. The Commissioner disallowed the deduction. The contribution was made on the 29th of December and paid to the trustees of the trust. The trust instrument which was submitted in evidence discloses that the trust qualifies under the Internal Revenue Code as one the contributions to which are deductible from taxable income. The fact that taxpayer's adult son and the taxpayer's wife are two of the three trustees does not affect the validity or qualification of the charitable trust. The contribution to the trust was properly made and the trust funds have been properly handled and disbursed throughout the life of the trust.

Upon argument and in his brief it appeared that the defendant did not mention the charitable trust and apparently no longer contends that the deduction for

the contribution thereto should be disallowed.

In view of the foregoing the Court has reached the following conclusions:

### 1.

■ The taxpayer was not in the real estate business and was not holding the tracts sold during the year 1945 primarily for sale to customers in the ordinary course of his trade or business. The income from the real estate sales was, therefore, not ordinary income, but was properly treated by the taxpayer as capital gains.

### 2.

■ The charitable trust, known as the Leo T. Barber Charity Trust, qualifies under Section 23(o), Internal Revenue Code, 26 U.S.C.A. § 23(o), as one contributions to which are deductible from taxable income. The trust so qualified in the year 1945, and the contribution made during the taxable year 1945 to the said trust was deductible.

### 3.

The evidence submitted by taxpayer established his right to recover.

The plaintiff is, therefore, entitled to recover the amount sued for, with interest as allowed by the statute, and may present a judgment accordingly.

### Judgment

In accordance with the findings of fact and conclusions of law contained in the opinion of the Court heretofore filed in this cause, it is hereby ordered and adjudged that the plaintiff recover of the defendant the sum of $1,164.80, together with interest as provided by law. Let the costs be taxed against the defendant.

### Certificate of Probable Cause

Upon motion of attorneys for the plaintiff, it being made to appear that suit was brought by plaintiff against Marion Allen, Collector of Internal Revenue, for recovery of illegal taxes collected by said Marion Allen, Collector of Internal Revenue; and

Whereas, during the pendency of the suit said Marion Allen died, and W. Sam Edwards, as administrator of the estate of Marion Allen, was substituted as party defendant in said suit; and

Whereas, as appears from the records herein, judgment has been rendered against the said W. Sam Edwards, administrator of the estate of Marion Allen in the principal amount of $1,164.80 in favor of Leo T. Barber, plaintiff, together with interest and costs as provided by law; and

It being made further to appear that said collection was made by said Marion Allen, Collector of Internal Revenue from the plaintiff herein and that said money was in turn by said Collector paid into the treasury of the United States in the performance of his official duties;

■ Now, therefore, the Court hereby certifies that there was probable cause for the said action done by the said Marion Allen, Collector of Internal Revenue, and that he acted under the direction of the Secretary of the Treasury.